**United States District Court**
Eastern District of Missouri
111 South Tenth Street, 3rd Floor
St. Louis, Missouri 63102

James G. Woodward                                                                 314-244-7900
Clerk of Court

January 11, 2011

U.S. District Court
Walter E. Hoffman United States Courthouse
600 Granby Street, Room 193
Norfolk, VA 23510-1915

RE: USA v. Jeffrey Alexander Sterling
EDMO CASE: 4:11MJ1004-TIA
Eastern District of Virginia #1:10CR485 (LMB)

Dear Clerk:
Pursuant to the Rule 5(c) (3) Commitment to Another District received in the above case, we are transferring the above entitled magistrate case to you.

On October 14, 2003, the Eastern District of Missouri implemented CM/ECF. You may access our electronic case file at the following web address: **https://ecf.moed.uscourts.gov/.** We have assigned a login and password for the district courts to use in accessing this information.

The login is **usdc** and the password is **usdc2use**. This login and password should not be shared with anyone other than federal court personnel who would have a need to access our electronic case file system.

In order to assist you in accessing our electronic file go to **https://ecf.moed.uscourts.gov/** or for help, call the help desk at 866-883-7749 (toll free) or 314-244-7650 or the St. Louis Office at 314-244-7800.

Please acknowledge receipt of this letter by returning a received stamped copy. Thank you for your assistance.

Sincerely,
JAMES WOODWARD, CLERK

Deputy Clerk

RECEIVED BY:_____ DATE:_____

CLOSED

# U.S. District Court
## Eastern District of Missouri (LIVE) (St. Louis)
## CRIMINAL DOCKET FOR CASE #: 4:11-mj-01004-TIA-1

Case title: USA v. Sterling
Other court case number: 1:10cr485 Eastern District of Virginia

Date Filed: 01/06/2011
Date Terminated: 01/10/2011

Assigned to: Magistrate Judge Terry I. Adelman

**Defendant (1)**

**Jeffrey Alexander Sterling**
*TERMINATED: 01/10/2011*

| **Pending Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Opening)** | |
| --- | --- |
| None | |

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Terminated)** | |
| --- | --- |
| None | |

| **Complaints** | **Disposition** |
| --- | --- |
| 18:793.F UNAUTHORIZED DISCLOSURE OF NATIONAL DEFENSE INFORMATION | |

**Plaintiff**

| **USA** | represented by | **John M. Bodenhausen** |
| --- | --- | --- |
| | | OFFICE OF U.S. ATTORNEY |
| | | 111 S. Tenth Street |
| | | 20th Floor |
| | | St. Louis, MO 63102 |
| | | 314-539-2200 |

Fax: 314-539-7695
Email: john.bodenhausen@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/06/2011 | | RULE 5 COMPLAINT - OUT signed by Judge Magistrate Judge Terry I. Adelman ACCESS TO THE PDF DOCUMENT IS RESTRICTED PURSUANT TO THE E-GOVERNMENT ACT. ACCESS IS LIMITED TO COUNSEL OF RECORD AND THE COURT. as to Jeffrey Alexander Sterling (1). (SAJ) (Entered: 01/06/2011) |
| 01/06/2011 | | Arrest of defendant Jeffrey Alexander Sterling date of arrest: 1/6/11 (KXS) (Entered: 01/06/2011) |
| 01/06/2011 | 1 | Minute Entry for proceedings held before Magistrate Judge Terry I. Adelman:Initial Appearance/Rule 5 as to Jeffrey Alexander Sterling held on 1/6/2011; Defendant to retain: counsel. Detention Hearing/Removal Hearing set for 1/10/2011 02:00 PM in Courtroom 15S before Magistrate Judge Terry I. Adelman. (Court Reporter or FTR Gold Operator initials:C. Long.) (FTR Gold (yes or no): Yes.) (proceedings started: 2:05 p.m..) (proceedings ended: 2:10 p.m..) (Defendant Location: custody.) (KXS) (Entered: 01/06/2011) |
| 01/07/2011 | 2 | BAIL REPORT(FILED UNDER SEAL) as to Jeffrey Alexander Sterling. (JMZ) (Entered: 01/07/2011) |
| 01/07/2011 | 3 | CJA 23 Financial Affidavit by Jeffrey Alexander Sterling (KKS) (Entered: 01/07/2011) |
| 01/10/2011 | 4 | MOTION for Pretrial Detention and Hearing ; originally filed as a SEALED MOTION by USA as to Jeffrey Alexander Sterling. (Bodenhausen, John) Modified on 1/10/2011 (KKS). Leave granted by TIA to unseal motion on 1/10/11 (Entered: 01/10/2011) |
| 01/10/2011 | 5 | Minute Entry for proceedings held before Magistrate Judge Terry I. Adelman:Detention Hearing as to Jeffrey Alexander Sterling held on 1/10/2011; Rule 5c3 Removal Hearing as to Jeffrey Alexander Sterling held on 1/10/2011; deft waives both hearings; deft to be transported to District Court in Virginia; the government requests motion for detention be unsealed; the Court grants the request (Court Reporter or FTR Gold Operator initials:K. Spurgeon.) (FTR Gold (yes or no): Yes.) (proceedings started: 2:08 p.m..) (proceedings ended: 2:12 p.m..) (Defendant Location: custody.) (KXS) (Entered: 01/10/2011) |
| 01/10/2011 | 6 | WAIVER of Rule 5(c)(3) Hearings by Jeffrey Alexander Sterling (KXS) (Entered: 01/10/2011) |
| 01/10/2011 | 7 | COMMITMENT TO ANOTHER DISTRICT as to Jeffrey Alexander Sterling. Defendant committed to District of Eastern District of Virginia (certified copies delivered to US Marshals). Signed by Magistrate Judge Terry I. Adelman on 1/10/11. (KXS) (Entered: 01/10/2011) |
| 01/11/2011 | 8 | Letter from USDC MOED to USDC Eastern District of Virginia re: Rule 5(c)(3) |

| | | commitment to another district (KXS) (Entered: 01/11/2011) |
|---|---|---|

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/18/2011 13:33:28 | | |
| **PACER Login:** us4419 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** 4:11-mj-01004-TIA | |
| **Billable Pages:** 2 | **Cost:** 0.16 | |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:11 MJ 1004 TIA |
| | ) | **TO BE FILED UNDER SEAL** |
| JEFFREY ALEXANDER STERLING, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR PRETRIAL DETENTION AND HEARING

Comes now the United States of America, by and through its Attorneys, Richard G.

Callahan, United States Attorney for the Eastern District of Missouri, and John Bodenhausen,

Assistant United States Attorney for said District, and moves the Court to order defendant

detained pending trial, and further requests that a detention hearing be held three (3) days from

the date of defendant's initial appearance before the United States Magistrate pursuant to Title

18, United States Code, §3141, et seq.  The present motion for detention was substantially

prepared by attorneys with the Department of Justice who are directly and personally involved in

the prosecution of the defendant.  On December 22, 2010, the defendant was indicted in cause

number 1:10CR485 (LMB) in the Eastern District of Virginia.

As and for its grounds, the Government states that the defendant poses a danger to certain

individuals and the community at large, and there is no combination of conditions that can

reasonably assure the safety of the community.  Put simply, the Indictment alleges that when the

Cental Intelligence Agency (hereinafter "CIA") took legal positions perceived by the defendant

as adverse to his interests in various administrative and civil actions filed by the defendant, the

defendant retaliated against the CIA by leaking highly classified information.  The defendant

facilitated those illegal disclosures of classified information through the telephone, e-mail, and face-to-face meetings.

The threat of continued criminal activity by this defendant requires his detention. By virtue of his former employment as a CIA case officer, the defendant participated in highly classified programs, worked with human assets and current and former CIA employees whose roles and identities remain classified, and possesses other highly classified information. Also by virtue of his former employment at the CIA, the defendant has been trained in clandestine tradecraft, including the use of communication techniques that avoid detection. Given the defendant's pattern and propensity of illegally disclosing classified information when the Government takes adverse action against him, and his training and experience that may facilitate his doing so in response to the present Indictment, this matter warrants detention to protect the lives of various individuals and to protect the community against further illegal disclosures of classified information.

## I.   Background

The defendant worked at the CIA from 1993 to 2002. *Indictment*, ¶5. After serving as a career trainee for eighteen months, the defendant worked as an operations officer for various divisions within the CIA for approximately the next five years. *Id.* From November 1998 through May 2000, he served as the case officer assigned to a highly classified clandestine operational program designed to impede the weapons capabilities of certain countries, including Country A (hereinafter "Classified Program No. 1"). *Id.* at ¶16. During that same time frame, the defendant was also the case officer assigned to handle the human asset associated with that program (hereinafter "Human Asset No. 1"). *Id.* at ¶14, 16.

2

In connection with his employment, the defendant signed five separate security and non-disclosure agreements in which he agreed never to disclose classified information to unauthorized persons. *Id*. at ¶ 8-10. In each one of these agreements, the defendant also acknowledged that the unauthorized disclosure of classified information could constitute a criminal offense. *Id*. at ¶ 8-10. Finally, in each one of these agreements, the defendant agreed that he would surrender any classified information in his possession at the conclusion of his employment. *Id*. at ¶ 11.

Beginning in August 2000, the defendant began to pursue various administrative and civil actions against the CIA concerning alleged employment-related racial discrimination and decisions made by the CIA's Publications Review Board regarding the defendant's desire to publish his memoirs. *Id*. at ¶ 18, 20. The defendant's anger and resentment grew over the CIA's decisions in these matters to such an extent that, for example, on January 7, 2003, he told a Publications Review Board member that he would come at the CIA "with everything at his disposal." *Id*. at ¶ 18, 31. On February 12, 2003, the CIA rejected Sterling's third offer to settle his discrimination lawsuit. *Id*. at ¶ 33.

In retaliation for these decisions by the CIA, beginning on February 27, 2003 and through March 29, 2003, the defendant made various telephone calls to Author A's residence and emailed Author A a newspaper article about the weapons capabilities of Country A. *Id*. at ¶ 34, 37, 38.

Shortly thereafter, in April 2003, the Author A had several conversations with the CIA's Office of Public Affairs, seeking comment about a newspaper article that the author intended to write concerning Classified Program No. 1, the program for which the defendant had been the case

3

officer. *Id.* at ¶ 39-42. These conversations revealed that unauthorized disclosures of classified information about Classified Program No. 1 to Author A had occurred. However, after a meeting in which senior government officials explained the classified nature of the program, the national security implications of disclosing the program, and the imminent danger the human asset associated with the program could face by its disclosure, Author A's employer, a national newspaper, agreed not to publish the article. *Id.* at ¶ 42, 43.

The defendant had resided in Herndon, Virginia, within the Eastern District of Virginia, from August 2000 through August 2003. *Id.* at ¶ 6. Upon the unsuccessful publication of the newspaper article, the defendant moved to the Eastern District of Missouri in August 2003 where he has resided ever since.

From December 2003 through November 2005, despite the national newspaper's decision not to publish the story, the defendant and Author A remained in touch via telephone and email. *Id.* at ¶ 44-54. During this time frame, the defendant provided more classified information, including information that enabled Author A to travel and gather more information for a forthcoming book. *Id.* at ¶ 53. Ultimately, in January 2006, Author A published a book that contained information about Classified Program No. 1 and Human Asset No. 1. *Id.* at ¶ 55. The defendant's illegal disclosures of classified information for the unsuccessful publication of the newspaper article in March and April 2003 and later for the successful publication of Author A's book in January 2006 form the basis of the charges in the present Indictment.

## II.   The Defendant Should Be Detained Because The Defendant Is a Danger to Certain Persons and The Community At Large.

A defendant may be detained only if a judicial officer "'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Stone,* 608 F.3d 939, 945 (6th Cir. 2010)(quoting 18 U.S.C. § 3142(e)). *See also United States v. Salerno,* 481 U.S. 739 (1987). A judicial officer's finding of dangerousness must be "'supported by clear and convincing evidence.'" *Stone,* 608 F.3d at 945 (quoting 18 U.S.C. § 3142(f)(2)(b)). Although the default position under the law is release, the fact remains that detention may be warranted where no combination of conditions will reasonably assure the safety of any other person and the community, even in instances where no rebuttable presumption of detention applies. '" *Stone,* 608 F.3d at 948 fn.7 (noting two Sixth Circuit cases upholding pre-trial detention based upon danger of further illegal activity even though the court did not address the respective defendants' propensity for violence in either case).

### A.   Danger to Certain Persons

The defendant's release poses two immediate forms of danger: danger to the lives of particular individuals and danger to the community at large. As alleged in the Indictment, "[i]n retaliation for the CIA's refusal to settle on terms favorable to defendant STERLING, as well as other decisions made by the CIA, defendant STERLING caused and attempted to cause the publication of classified information about Classified Program No. 1 and Human Asset No. 1 that defendant STERLING characterized in a false and misleading manner." *See Indictment,* ¶18.

The consistent pattern of the defendant's illegal disclosure of classified information when faced with adverse action by the Government is striking and undeniable. More specifically,

5

when the CIA rejected a settlement offer on October 30, 2001, the defendant illegally disclosed classified information. *Id.* at ¶ 22, 23. When the CIA rejected another settlement offer on February 12, 2003, the defendant illegally disclosed more and different classified information. *Id.* at ¶ 33, 34. As the CIA successfully obtained dismissal of the defendant's underlying civil complaint and defended the district court's decision on appeal, *see Sterling v. Tenet*, 416 F.3d 338, 341-42 (4th Cir. 2005), the defendant illegally disclosed or caused the disclosure of classified information. *Indictment* at ¶ 44-54.

In making these illegal disclosures, the defendant put the life of at least one individual in great danger. This individual, identified as Human Asset No. 1 in the Indictment, *see Indictment*, ¶14, played a role in Classified Program No. 1. The defendant's illegal disclosures revealed certain identifying information about Human Asset No. 1 that placed Human Asset No. 1 in great danger. *Id.* at ¶42. The threat to Human Asset No. 1 was so great that certain United States government officials cited the danger to Human Asset No. 1 as one reason why Author A's employer should not publish a newspaper article about Classified Program No. 1 in late April 2003. *Id.* at ¶42. The perceived danger to Human Asset No. 1 as well as other reasons were apparently significant enough to cause Author A's employer not to publish the newspaper article. *Id.* at ¶43. By continuing to illegally disclose or cause the disclosure of classified information, the defendant remained unabated in his desire to retaliate against the Government, no matter the cost of any human's life. *See Indictment* at ¶ 44-54.

Human Asset No. 1's life, however, would not be the only person's life placed in danger by the defendant's release, again given the defendant's pattern and propensity of illegally disclosing classified information when confronted with adverse Government action. The defendant knows

the true names and identities of all of the current and former CIA employees involved with Classified Program No. 1, some of whom remain within covert status at the CIA. The defendant, a trained lawyer, presumably knows that these individuals must be potential witnesses. Given the blatant disregard with which the defendant held Human Asset No. 1's life over an issue so unremarkable as money, the defendant's efforts at retaliation would likely extend to those who the defendant believed may have played some part in the current charges when the defendant's liberty is at stake. Detention would guarantee a level of confidence and security in knowing that the lives of these individuals would remain safe from the unauthorized disclosure of classified information.

### B. Danger to The Community at Large

The second danger posed by the defendant is the danger to the community posed by the defendant's likelihood of continuing to make illegal disclosures of classified information. The "safety of the community" concern expressed in 18 U.S.C. § 3142 encompasses more than merely danger of harm involving physical violence.[1] Courts have recognized that a threat to the safety of the community may include, for example, a continuing generalized threat of criminal activity. *See Stone*, 608 F.3d at 948 fn.7 (noting two Sixth Circuit cases upholding pre-trial detention based on continuing criminal activity); *United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993)(holding that "[t]he Bail Reform Act's concept of dangerousness covers the effect of a

---

[1] The legislative history of §3142 supports this interpretation. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195) ("The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.").

defendant's release on the safety of identifiable individuals, such as a victim or witness, as well as 'the danger that the defendant might engage in criminal activity to the detriment of the community.'" (quotation omitted)); *United States v. Reynolds,* 956 F.2d 192 (9th Cir. 1992) (holding that "danger may, at least in some cases, encompass pecuniary or economic harm."); *United States v. Provenzano,* 605 F.2d 85, 95 (3rd Cir. 1979)(holding that danger not limited to physical harm, but may include the opportunity to exercise a substantial and corrupting influence within a labor union).

There can be no doubt that protecting the nation's security secrets is vital and important. As the Supreme Court has noted, "[i]t is 'obvious and unarguable' that *no governmental interest is more compelling* than the security of the Nation." *Haig v. Agee,* 453 U.S. 280, 307 (1981) (emphasis added). More particularly, "'[t]he Government has a substantial interest in protecting sensitive sources and methods of gathering information,'" *United States v. Abu Ali,* 528 F.3d 210, 247 (4th Cir. 2008) (quoting *United States v. Smith,* 780 F.2d 1102, 11085 (4th Cir. 1985)), and "'in protecting both the secrecy of information to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service.'" *Abu Ali,* 528 F.3d at 247 (quoting *C.I.A. v. Sims,* 471 U.S. 159, 175 (1985)). Any continuing criminal threat to national security interests logically must fall within the purview of the Bail Reform Act.

The threat of continued illegal disclosures of classified information posed by the defendant's release is great. The defendant's *modus operandi* is to disclose classified information when he perceives that he has been wronged by the Government. His decisions and actions were deliberate, methodical, and unrelenting. The defendant spent almost three years disclosing and causing the disclose of classified information to retaliate against the CIA for various legal

8

decisions made by the CIA that the defendant did not like. By virtue of his former employment, the defendant has knowledge of other classified programs, the identities of other human assets and other current and former CIA employees, and other classified information.

When faced with this criminal Indictment, it is incomprehensible to believe that the defendant will not retaliate in the same deliberate, methodical, vindictive manner. The defendant's unauthorized disclosures of classified information may not occur immediately, but his pattern and practice should inform the Court that they will likely happen. The only practical and effective of way of preventing those disclosures from occurring is by detention.

C. Inability of Non-Detention Methods to Protect the Safety of Persons or the Community

The defendant was a CIA case officer by training. He received at least one assumed identity for employment purposes. The defendant knows how to engage in clandestine tradecraft. Among other things, he knows how to use the telephone to avoid detection, to arrange face-to-face meetings to reduce the likelihood of being spotted, and to expose counter-surveillance efforts. As alleged in the Indictment, the defendant used the telephone and email to facilitate his disclosures of classified information, and did so in a way to avoid detection. *See Indictment* at ¶ 19, 34, 37, 38, 44-51, 54.

Home detention and electronic monitoring are insufficient because the only way to protect certain persons and the community at large from the harm caused by the defendant's additional illegal disclosures of classified information is to deny the defendant access to the telephone and the Internet and regulate who may visit the defendant at home. Simply placing the defendant in pre-trial home detention and under electronic monitoring "does not minimize the very real possibility that further similar criminal conduct could be carried out from home." *See United*

9

*States v. Bergrin,* 2009 WL 1560039 at 9 (D.N.J. 2009). Since the defendant used the telephone, the Internet and face-to-face meetings to illegally disclose classified information in this case, it would be impossible to prevent his continued criminal activity without more stringent conditions.

The addition of more stringent conditions, however, would not solve the problem. Prohibiting or severely restricting the defendant's use or access to a computer or telephone "is a difficult condition of release to enforce." *See Bergrin,* 2009 WL 1560039 at 9 (D.N.J. 2009). *See also United States v. Voelker,* 489 F.3d 139, 145 (3d Cir. 2007)(stating that "[t]he ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion."). In the end, prohibiting or severely restricting the defendant's use or access to a computer or telephone and regulating his visitors would do no more than "'elaborately replicate a detention facility without the confidence of security such a facility instills.'" *Bergrin,* 2009 WL 1560039 at 9 (quoting *United States v. Gotti,* 776 F.Supp. 666, 672 (E.D.N.Y.1991)). *See also United States v. Orena,* 986 F.2d 628,632-33 (2d Cir. 1993)(finding $4 million bail package for both defendants secured by family homes and property, home confinement, restricted visitation and phone calls and consent to government searches insufficient to address dangerousness). The cost to national security and the danger posed to lives of certain individuals is simply too high not to require the defendant's detention in this matter.

In the end, any conditions that this Court may consider imposing would require the Court to trust and rely upon the defendant's agreement not to violate his conditions of release and, more specifically, not to illegally disclose any classified information. Yet the defendant's history of

honoring similar types of agreements is abysmal. Despite agreeing on five separate occasions that he would never disclose classified information, *see Indictment* at ¶ 8-10, the defendant did so repeatedly over the course of a three year period. This Court simply cannot trust the defendant to adhere to a similar promise when he so readily violated such a promise in the past.

## III. All of the Section 3142(g) Factors Weigh in Favor of Detention

### A. The Nature and Circumstances of the Offenses Charged

The charges contained in the present indictment are serious. The charges involve the unauthorized disclosure of highly classified information related to Classified Program No. 1, a program designed to impede the progress of the weapons capabilities of certain countries. These charges, when coupled with the defendant's underlying selfish and vindictive motivations and apparent lack of concern for the safety of Human Asset No. 1, "indicate a strong threat to society." *Stone*, 608 F.3d at 947.

The defendant's unauthorized disclosures, however, may be viewed as more pernicious than the typical espionage case where a spy sells classified information for money. Unlike the typical espionage case where a single foreign country or intelligence agency may be the beneficiary of the unauthorized disclosure of classified information, this defendant elected to disclose the classified information publicly through the mass media. Thus, every foreign adversary stood to benefit from the defendant's unauthorized disclosure of classified information, thus posing an even greater threat to society.

B. The Weight of the Evidence Against the Defendant

"This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Id.* at 948. The Government previously addressed this factor in Section II.

C. The History and Characteristics of the Defendant

"Courts have never required a prior criminal record before ordering detention." *Id.* at 950. "'Although a prior record of violence eases the government's burden of showing dangerousness, it is not essential.'" *Id.* (quoting *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir. 1991). A single threat to a police officer may be sufficient to show a danger to the community. *Stone*, 608 F.3d at 950 (citing *United States v. Gomez-Fernandez*, 1999 WL 992985 at *2 (10th Cir. 1999)).

The history and characteristics of the defendant seemingly would support release. The defendant does not have a criminal record. He has no known substance abuse problem. The defendant moved to Missouri in August 2003 and has been employed for the past six years. He is married, and owns his own home.

However, looking beyond these otherwise innocuous facts, the truly relevant history and characteristics of the defendant support detention. With the return of the Indictment, there is every reason to believe that the defendant's desire to exact revenge upon the Government has increased exponentially, rather than abated. The defendant retains his training in clandestine tradecraft that he could use to facilitate the disclosure of classified information. He retains the knowledge of how to develop relationships with members of the media to make those disclosures as damaging as possible. And in any event, his conduct that facilitated the illegal disclosure of

12

classified information continued long *after* he settled in Missouri and found gainful employment here.

Indeed, from December 2003 through November 2005, the defendant and Author A communicated via telephone and email. *Indictment*, ¶ 44-54. During this time frame, while living in Missouri, the defendant received a Federal Express package from Author A that related to the defendant's unauthorized disclosures of classified information to Author A. *Id.* at ¶ 50. In November 2004, the defendant enabled Author A's travel to a foreign country to gather more information for the forthcoming book by having provided certain classified information regarding the operational details of Classified Program No. 1 and Human Asset No. 1. *Id.* at ¶ 53. Finally, in approximately March 2005, while the defendant's now-wife was away for the weekend, Author A traveled to Missouri and met with the defendant.

Thus, while at first blush the defendant's history and characteristics would support release, they in fact do not. The defendant's personal history and characteristics in fact are no bar to his continued criminal activity. His former employment as a CIA case officer and knowledge and practice of clandestine tradecraft would only serve to facilitate continued criminal activity.

   D. The Nature and Seriousness of the Danger to Any Person or the Community

   The Government previously addressed this factor in Section II.

**IV. Conclusion**

   Based upon the foregoing, no conditions of release will reasonably assure the safety of any person or the community. Accordingly, the Government requests this Court to order the defendant detained prior to trial, and further to order a detention hearing three (3) days from the

13

date of defendant's initial appearance. Given the nature of the case and the information at issue,

the government respectfully requests that the present motion be filed under seal.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney


_s/ John M. Bodenhausen_
JOHN M. BODENHAUSEN
Assistant United States Attorney
111 South 10th Street, Rm. 20.333
St. Louis, Missouri 63102
314-539-2200

14

Rev. 10/31/07

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

### Courtroom Minute Sheet – Criminal Case

Date _1/10/11_ Judge __Terry I. Adelman__ Case No. _4:11mJ 1004 TIA_

UNITED STATES OF AMERICA v. _Jeffrey Sterling_

Court Reporter _____ Deputy Clerk _K. Spurgeon_

Assistant United States Attorney(s) _William Welch, John Bodenhausen_

Attorney(s) for Defendant(s) : _Edward McMahon, Jr._

Interpreter _____  ☐ SEALED PROCEEDING

### Proceedings:

| | | |
|---|---|---|
| ☐ Initial Appearance | ☒ Detention Hearing | ☐ Preliminary Revocation |
| ☐ Arraignment | ☐ Bond Review | ☐ Probation |
| ☐ Preliminary Examination | ☐ Bond Execution/Appearance Bond | ☐ Supervised Release |
| ☐ Motion Hearing | ☐ In Court Hrg (WAIVER OF MOTIONS) | ☐ Competency |
| ☐ Evidentiary Hearing | ☐ Change of Plea/Sentencing | ☐ Pretrial/Status Conference |
| ☐ Oral Argument/Non Evidentiary Hearing | ☒ Rule 5(c)(3)Removal (Identity) | ☐ Material Witness |

Parties present for ~~hearing on~~ _detention + removal hearings; deft waives_
_both hearings; deft to be transported to District Court_
_in Virginia; the motion for detention shall be unsealed_

☐ Oral Motion for appointment of counsel (GRANTED)  ☐ Defendant is advised of rights/indicates understanding of those rights

☐ Bail/Bond set in the amount of: $ _____  ☐ Secured Appearance Bond  ☐ Secured by 10%

☐ Secured by cash only   ☐ Secured by property   ☐ Unsecured bond   ☐ O/R bond

☐ Government filed motion for pretrial detention. Detention hearing scheduled for _____

☐ Preliminary examination set for _____ @ _____

☐ Defendant arraigned   ☐ Waives reading of indictment/information   ☐ Matter taken under advisement

☐ Plea entered _____  Order on pretrial motions:  ☐ issued  ☐ to issue

☐ Oral Motion for Suppression   ☐ Oral Motion for Extension of Time to File Pretrial Motions

☐ Defendant waives _____  ☐ order to issue  ☐ oral ruling

☐ Defendant waives evidentiary hearing   ☐ By leave of court withdraws all pretrial motions

Trial date/time _____  Before _____

☒ Remanded to custody   ☐ Released on bond

Next hearing date/time _____  Type of hearing _____  Before _____

Proceeding commenced _2:08 pm_  Proceeding concluded _2:12 pm_  Continued to _____

[ ] Based upon the evidence produced, the Court finds probable cause to believe the defendant violated the law set out in the criminal complaint.

AO 466 (Rev. 8/01) Waiver of Rule 40 Hearings

# UNITED STATES DISTRICT COURT

EASTERN    DISTRICT OF  MISSOURI

UNITED STATES OF AMERICA

V.

JEFFREY ALEXANDER STERLING

Defendant

## WAIVER OF RULE 40 HEARINGS
### (All Criminal Cases)

JUDGE:  Terry I. Adelman

CASE NUMBER:  4:11MJ1004 TIA

I understand that charges are pending in the    Eastern                    District of  Virginia

alleging violation of   18 USC 793(d), etc.                    and that I have been arrested in this district and
                        (Title and Section / Probation / Supervised Release)

taken before a United States magistrate judge, who has informed me of the charge(s) and my rights to:

    (1)   retain counsel or request the assignment of counsel if I am unable to retain counsel;

    (2)   an identity hearing to determine whether I am the person named in the charges;

*- Check one only -*

[ ]   EXCLUDING PROBATION OR SUPERVISED RELEASE CASES:

    (3)   a preliminary examination (unless an indictment has been returned or information filed) to determine whether there is probable cause to
          believe an offense has been committed by me, the hearing to be held in this district or the district of prosecution; and

    (4)   request transfer of the proceedings to this district under Rule 20, Fed. R. Crim. P., in order to plead guilty.

[ ]   PROBATION OR SUPERVISED RELEASE CASES:

    (3)   a preliminary examination (if the violation charged allegedly occurred in this district, and I am held in custody solely on that charge)
          to determine whether there is probable cause to believe I have violated the terms of my probation/supervised release; and

    (4)   a hearing under Rule 46 (c), Fed. R. Crim. P., in which I have the burden of establishing my eligibility for release.

I HEREBY WAIVE (GIVE UP) MY RIGHT TO A(N):

(X) identity hearing

(  ) preliminary examination

(  ) identity hearing and have been informed I have no right to a preliminary examination

(  ) identity hearing but request a preliminary examination be held in the prosecuting district and, therefore, consent to the issuance of an
    order requiring my appearance in the prosecuting district where the charges are pending against me.

*Defendant*

January 10, 2011
*Date*

*Defense Counsel*

AO 94 (Rev. 8/97) Commitment to Another District

# UNITED STATES DISTRICT COURT
### Eastern District of Missouri

| UNITED STATES OF AMERICA | **COMMITMENT TO ANOTHER DISTRICT** |
|---|---|
| v. | |
| Jeffrey Alexander Sterling | |

| DOCKET NUMBER | | MAGISTRATE JUDGE CASE NUMBER | |
|---|---|---|---|
| District of Arrest | District of Offense | District of Arrest | District of Offense |
| | 1:10CR485 (LMB) | 4:11MJ1004 TIA | |

**CHARGES AGAINST THE DEFENDANT ARE BASED UPON AN**

☒ Indictment ☐ Information ☐ Complaint ☐ Other (specify)

charging a notation of   18 USC 793(d)    U.S.C. §   etc.

| DISTRICT OF OFFENSE | A TRUE COPY OF THE ORIGINAL |
|---|---|
| Eastern District of Virginia | JAMES G. WOODWARD, CLERK |
| **DESCRIPTION OF CHARGES:** | UNITED STATES DISTRICT COURT |
| | EASTERN DISTRICT OF MISSOURI |
| | BY: Katie [signature] |
| Unauthorized Disclosure of National Defense Information, etc, | DEPUTY CLERK |

**CURRENT BOND STATUS:**

☐ Bail Fixed at _____ and conditions were met
☐ Bail Fixed at _____ and conditions were not met
☐ Government moved for detention and defendant detained after hearing in District of Arrest
☒ Government moved for detention and defendant detained pending detention hearing in District of Offense
☐ Other (specify)

| Representation: | ☒ Retained Own Counsel | ☐ Federal Defender Organization | ☐ CJA Attorney | ☐ None |
|---|---|---|---|---|

| Interpreter Required? | ☒ No | ☐ Yes | Language: _____ |
|---|---|---|---|

### DISTRICT OF MISSOURI

## TO: THE UNITED STATES MARSHAL

You are hereby commanded to take custody of the above named defendant and to transport that defendant with a certified copy of this commitment forthwith to the district of offense as specified above and there deliver the defendant to the United States Marshal for that District or to some other officer authorized to receive the defendant.

| January 10, 2011 | [signature] |
|---|---|
| Date | United States Judge or Magistrate Judge |

### RETURN

This commitment was received and executed as follows:

| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
|---|---|---|
| | | |

| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL |
|---|---|---|
| | | |