SECRECY AGREEMENT

1. I, JEFFREY ALEXANDER STERLING (print full name), hereby agree to accept as a prior condition of my being employed by, or otherwise retained to perform services for, the Central Intelligence Agency, or for staff elements of the Director of Central Intelligence (hereinafter collectively referred to as the "Central Intelligence Agency"), the obligations contained in this agreement.

2. I understand that in the course of my employment or other service with the Central Intelligence Agency I may be given access to information or material that is classified or is in the process of a classification determination in accordance with the standards set forth in Executive Order 12356 as amended or superseded, or other applicable Executive order, that if disclosed in an unauthorized manner would jeopardize intelligence activities of the United States Government. I accept that by being granted access to such information or material I will be placed in a position of special confidence and trust and become obligated to protect the information and/or material from unauthorized disclosure.

3. In consideration for being employed or otherwise retained to provide services to the Central Intelligence Agency, I hereby agree that I will never disclose in any form or any manner, to any person not authorized by the Central Intelligence Agency to receive it, any information or material in either of the following categories:

   a. information or material received or obtained in the course of my employment or other service with the Central Intelligence Agency that is marked as classified or that I know is classified;

   b. information or material received or obtained in the course of my employment or other service with the Central Intelligence Agency that I know is in the process of a classification determination.

4. I understand that it is my responsibility to consult with appropriate management authorities in the component or Directorate that employs me or has retained my services, or with the Central Intelligence Agency's Publications Review Board if I am no longer employed by or associated with the Agency, in order to ensure that I know: 1) whether information or material within my knowledge or control that I have reason to believe might be in either of the categories set forth in paragraph 3 is considered by the Central Intelligence Agency to fit in either of those categories; and, 2) whom the Agency has authorized to receive such information or material.

5. As a further condition of the special confidence and trust reposed in me by the Central Intelligence Agency, I hereby agree to submit for review by the Central Intelligence Agency any writing or other preparation in any form, including a work of fiction, which contains any mention of intelligence data or activities, or contains any other information or material that might be based upon either of the categories set forth in paragraph 3, that I contemplate disclosing publicly or that I have actually prepared for public disclosure, either during my employment or other service with the Central Intelligence Agency or at any time thereafter, prior to discussing it with or showing it to anyone who is not authorized to have access to the categories set forth in paragraph 3. I further agree that I will not take any steps toward public disclosure until I have received written permission to do so from the Central Intelligence Agency.

6. I understand that the purpose of the review described in paragraph 5 is to give the Central Intelligence Agency an opportunity to determine whether the information or material that I contemplate disclosing publicly contains any information or material that I have agreed not to disclose. I further understand that the Agency will act upon my submission and make a response to me within a reasonable time. I further understand that if I dispute the Agency's initial determination on the basis that the information or material in question derives from public sources, I may be called upon to specifically identify such sources. My failure or refusal to do so may by itself result in denial of permission to publish or otherwise disclose the information or material in dispute.

7. I understand that all information or material that I may acquire in the course of my employment or other service with the Central Intelligence Agency that fits either of the categories set forth in paragraph 3 of this agreement are and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. I agree to surrender anything constituting, containing or reflecting such information or material upon demand by an appropriate official of the Central Intelligence Agency, or upon the conclusion of my employment or other service with the Central Intelligence Agency.

8. I agree to notify the Central Intelligence Agency immediately in the event that I am called upon by judicial or congressional authorities, or by specially established investigatory bodies of the executive branch, to testify about, or provide, information or material that I have agreed herein not to disclose. In any communication with any such authority or body, I shall observe all applicable rules or procedures for ensuring that such information and/or material is handled in a secure manner.

9. I understand that nothing contained in this agreement prohibits me from reporting intelligence activities that I consider to be unlawful or improper directly to the Intelligence Oversight Board established by the President, or to any successor body that the President may establish, or to the Select Committee on Intelligence of the House of Representatives or the Senate. I recognize that there are also established procedures for bringing such matters to the attention of the Agency's Inspector General or to the Director of Central Intelligence. In making any report referred to in this paragraph, I will observe all applicable rules or procedures for ensuring the secure handling of any information or material that may be involved. I understand that any such information or material continues to be subject to this agreement for all other purposes and that such reporting does not constitute public disclosure or declassification of that information or material.

FORM 368 OBSOLETE PREVIOUS
10-91 EDITIONS
REV.



GOVERNMENT
EXHIBIT
1
1:10CR485

X00001

10. I understand that any breach  ...his agreement by me may result in the Cen...  ntelligence Agency taking administrative action against me, which can include temporary loss of pay or termination of my employment or other service with the Central Intelligence Agency. I also understand that if I violate the terms of this agreement, the United States Government may institute a civil proceeding to seek compensatory damages or other appropriate relief. Further, I understand that the disclosure of information that I have agreed herein not to disclose can, in some circumstances, constitute a criminal offense.

11. I understand that the United States Government may, prior to any unauthorized disclosure that is threatened by me, choose to apply to any appropriate court for an order enforcing this agreement. Nothing in this agreement constitutes a waiver on the part of the United States to institute a civil or criminal proceeding for any breach of this agreement by me. Nothing in this agreement constitutes a wavier on my part of any possible defenses I may have in connection with either civil or criminal proceedings that may be brought against me.

12. In addition to any other remedy to which the United States Government may become entitled, I hereby assign to the United States Government all rights, title, and interest in any and all royalties, remunerations, and emoluments that have resulted or will result or may result from any divulgence, publication or revelation of information or material by me that is carried out in breach of paragraph 5 of this agreement or that involves information or material prohibited from disclosure by the terms of this agreement.

13. I understand and accept that, unless I am provided a written release from this agreement or any portion of it by the Director of Central Intelligence or the Director's representative, all the conditions and obligations accepted by me in this agreement apply both during my employment or other service with the Central Intelligence Agency, and at all times thereafter.

14. I understand that the purpose of this agreement is to implement the responsibilities of the Director of Central Intelligence, particularly the responsibility to protect intelligence sources and methods, as specified in the National Security Act of 1947, as amended.

15. These restrictions are consistent with and do not supersede conflict with or otherwise alter the employee obligations rights or liabilities created by Executive Order 12356; section 7211 of title 5, United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the Military); section 2302(b)(8) of title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 U.S.C., 421 *et seq.*) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including section 641, 793, 794, 798, and 952 of title 18, United States Code, and section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

16. I understand that nothing in this agreement limits or otherwise affects any provision of criminal or other law that may be applicable to the unauthorized disclosure of classified information, including the espionage laws (sections 793, 794 and 798 of Title 18, United States Code) and the Intelligence Identities Protection Act of 1982 (P.L. 97-200; 50 U.S.C., 421 *et seq.*).

17. Each of the numbered paragraphs and lettered subparagraphs of this agreement is severable. If a court should find any of the paragraphs or subparagraphs of this agreement to be unenforceable, I understand that all remaining provisions will continue in full force.

18. I make this agreement in good faith, and with no purpose of evasion.

19. This agreement shall be interpreted under and in conformance with the law of the United States.

Signature

Date: 5/14/93

The execution of this agreement was witnessed by the undersigned, who accepted it on behalf of the Central Intelligence Agency as a prior condition of the employment or other service of the person whose signature appears above.

WITNESS AND ACCEPTANCE:

**Ms. W.**

Signature

**Ms. W.**

Printed Name

14 May 1993

Date

# SENSITIVE COMPARTMENTED INFORMATION NONDISCLOSURE AGREEMENT

An Agreement Between __JEFFREY ALEXANDER STERLING__ and the United States
*(Name – Printed or Typed)*

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to information or material protected within Special Access Programs, hereinafter referred to in this Agreement as Sensitive Compartmented Information (SCI). I have been advised that SCI involves or derives from intelligence sources or methods and is classified or is in the process of a classification determination under the standards of Executive Order 12356 or other Executive order or statute. I understand and accept that by being granted access to SCI, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information or material have been approved for access to it, and I understand these procedures. I understand that I may be required to sign subsequent agreements upon being granted access to different categories of SCI. I further understand that all my obligations under this Agreement continue to exist whether or not I am required to sign such subsequent agreements.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that last authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in the Department or Agency that last authorized my access to SCI, whether or not I am still employed by or associated with that Department or Agency or a contractor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be SCI, or related to or derived from SCI, is considered by such Department or Agency to be SCI. I further understand that I am also obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

4. In consideration of being granted access to SCI and of being assigned or retained in a position of special confidence and trust requiring access to SCI, I hereby agree to submit for security review by the Department or Agency that last authorized my access to such information or material, any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that I have reason to believe are derived from SCI, that I contemplate disclosing to any person not authorized to have access to SCI or that I have prepared for public disclosure. I understand and agree that my obligation to submit such preparations for review applies during the course of my access to SCI and thereafter, and I agree to make any required submissions prior to discussing the preparation with, or showing it to, anyone who is not authorized to have access to SCI. I further agree that I will not disclose the contents of such preparation to any person not authorized to have access to SCI until I have received written authorization from the Department or Agency that last authorized my access to SCI that such disclosure is permitted.

5. I understand that the purpose of the review described in paragraph 4 is to give the United States a reasonable opportunity to determine whether the preparation submitted pursuant to paragraph 4 sets forth any SCI. I further understand that the Department or Agency to which I have made a submission will act upon it, coordinating within the Intelligence Community when appropriate, and make a response to me within a reasonable time, not to exceed 30 working days from date of receipt.

6. I have been advised that any breach of this Agreement may result in the termination of my access to SCI and removal from a position of special confidence and trust requiring such access, as well as the termination of my employment or other relationships with any Department or Agency that provides me with access to SCI. In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including the provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and of Section 783(b), Title 50, United States Code. Nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

7. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action can be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys fees incurred by the United States Government may be assessed against me if I lose such action.

8. I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title, or claim whatsoever to such information. I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entity providing me access to such materials. If I do not return such materials upon request, I understand this may be a violation of Section 793, Title 18, United States Code.

9. Unless and until I am released in writing by an authorized representative of the Department or Agency that last provided me with access to SCI, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to SCI, and at all times thereafter.

10. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect. This Agreement concerns SCI and does not set forth such other conditions and obligations not related to SCI as may now or hereafter pertain to my employment by or assignment or relationship with the Department or Agency.

11. I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793, 794, 798, and 952 of Title 18, United States Code, and Section 783(b) of Title 50, United States Code, and Executive Order 12356, as amended, so that I may read them at this time, if I so choose.

FORM **4414** (Replaces Form 4355 which is obsolete and will not be used)



X00003

12. I hereby assign to the United States Government all rights, title and interest, and all royalties, remunerations, and emoluments that have resulted, will result, or may result from any disclosure, publication, or revelation not consistent with the terms of this Agreement.

13. These restrictions are consistent with and do not supersede conflict with or otherwise alter the employee obligations rights or liabilities created by Executive Order 12356; section 7211 of title 5, United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the Military); section 2302(b)(8) of title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 USC 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including section 641, 793, 794, 798, and 952 of title 18, United States Code, and section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

14. This Agreement shall be interpreted under and in conformance with the law of the United States.

15. I make this Agreement without any mental reservation or purpose of evasion.

_Jeffrey Sterling_  
Signature

Date: 20 MAY 1993

The execution of this Agreement was witnessed by the undersigned who accepted it on behalf of the United States Government as a prior condition of access to Sensitive Compartmented Information.

WITNESS and ACCEPTANCE: **Mr. B 2**  
Signature

Date: 20 MAY 1993

---

# SECURITY BRIEFING / DEBRIEFING ACKNOWLEDGMENT

SI  GAMMA  TK

(Special Access Programs by Initials Only)

JEFFREY ALEXANDER STERLING — DO/CI

SSN (See Notice Below) | Printed or Typed Name | Organization

**BRIEF** DATE 20 MAY 1993

I hereby acknowledge that I was briefed on the above SCI Special Access Programs(s):

_Jeffrey Sterling_  
Signature of Individual Briefed

**DEBRIEF** DATE _____

Having been reminded of my continuing obligation to comply with the terms of this Agreement, I hereby acknowledge that I was debriefed on the above SCI Special Access Programs(s):

Signature of Individual Debriefed

I certify that the briefing presented by me on the above date was in accordance with relevant SCI procedures.

**Mr. B 2**  
Signature of Briefing/Debriefing Officer

**Mr. B 2**  
Printed or Typed Name

SSN (See Notice Below)

OSi  
Organization (Name and Address)

---

NOTICE: The Privacy Act, 5 U.S.C. 522a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above, 2) determine that your access to the information indicated has terminated, or 3) certify that you have witnessed a briefing or debriefing. Although disclosure of your SSN is not mandatory, your failure to do so may impede such certifications or determinations.

X00004

SENSITIVE COMPARTMENTED INFORMATION

An Agreement Between **E. M. SIBELING** and the United States
(Name - Printed or Typed)

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to information or material protected within Special Access Programs, hereinafter referred to in this Agreement as Sensitive Compartmented Information (SCI). I have been advised that SCI involves or derives from intelligence sources or methods and is classified or is in the process of a classification determination under the standards of Executive Order 12356 or other Executive order or statute. I understand and accept that by being granted access to SCI, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information or material have been approved for access to it, and I understand these procedures. I understand that I may be required to sign subsequent agreements upon being granted access to different categories of SCI. I further understand that all my obligations under this Agreement continue to exist whether or not I am required to sign such subsequent agreements.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that last authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in the Department or Agency that last authorized my access to SCI, whether or not I am still employed by or associated with that Department or Agency or a contractor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be SCI, or related to or derived from SCI, is considered by such Department or Agency to be SCI. I further understand that I am also obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

4. In consideration of being granted access to SCI and of being assigned or retained in a position of special confidence and trust requiring access to SCI, I hereby agree to submit for security review by the Department or Agency that last authorized my access to such information or material, any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that I have reason to believe are derived from SCI, that I contemplate disclosing to any person not authorized to have access to SCI or that I have prepared for public disclosure. I understand and agree that my obligation to submit such preparations for review applies during the course of my access to SCI and thereafter, and I agree to make any required submissions prior to discussing the preparation with, or showing it to, anyone who is not authorized to have access to SCI. I further agree that I will not disclose the contents of such preparation to any person not authorized to have access to SCI until I have received written authorization from the Department or Agency that last authorized my access to SCI that such disclosure is permitted.

5. I understand that the purpose of the review described in paragraph 4 is to give the United States a reasonable opportunity to determine whether the preparation submitted pursuant to paragraph 4 sets forth any SCI. I further understand that the Department or Agency to which I have made a submission will act upon it, coordinating within the Intelligence Community when appropriate, and make a response to me within a reasonable time, not to exceed 30 working days from date of receipt.

6. I have been advised that any breach of this Agreement may result in the termination of my access to SCI and removal from a position of special confidence and trust requiring such access, as well as the termination of my employment or other relationships with any Department or Agency that provides me with access to SCI. In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including the provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and of Section 783(b), Title 50, United States Code. Nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

7. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action can be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys fees incurred by the United States Government may be assessed against me if I lose such action.

8. I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title, or claim whatsoever to such information. I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entity providing me access to such materials. If I do not return such materials upon request, I understand this may be a violation of Section 793, Title 18, United States Code.

9. Unless and until I am released in writing by an authorized representative of the Department or Agency that last provided me with access to SCI, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to SCI, and at all times thereafter.

10. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect. This Agreement concerns SCI and does not set forth such other conditions and obligations not related to SCI as may now or hereafter pertain to my employment by or assignment or relationship with the Department or Agency.

11. I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793, 794, 798, and 952 of Title 18, United States Code, and Section 783(b) of Title 50, United States Code, and Executive Order 12356, as amended, so that I may read them at this time, if I so choose.

FORM 4414

GOVERNMENT
EXHIBIT
3
1:10CR485

X00005

12. I hereby assign to the U_ States Government all rights, title and inte_ and all royalties, remunerations, and emoluments that have resulted, will result, or may result from any disclosure, publication, or revelation not consistent with the terms of this Agreement.

13. These restrictions are consistent with and do not supersede conflict with or otherwise alter the employee obligations rights or liabilities created by Executive Order 12356; section 7211 of title 5, United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the Military); section 2302(b)(8) of title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 USC 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including section 641, 793, 794, 798, and 952 of title 18, United States Code, and section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

13. This Agreement shall be interpreted under and in conformance with the law of the United States.

14. I make this Agreement without any mental reservation or purpose of evasion.

_Jeffrey Sterling_ / Signature  
4 JAN '94 / Date

The execution of this Agreement was witnessed by the undersigned who accepted it on behalf of the United States Government as a prior condition of access to Sensitive Compartmented Information.

WITNESS and ACCEPTANCE: Mr. S 4 / Signature / Date

## SECURITY BRIEFING / DEBRIEFING ACKNOWLEDGMENT

SI   GAMMA

(Special Access Programs by Initials Only)

JEFFREY ALEXANDER STERLING   CIA

SSN (See Notice Below) | Printed or Typed Name | Organization

**BRIEF** DATE 4 JAN '94

I hereby acknowledge that I was briefed on the above SCI Special Access Programs(s):

_Jeffrey Sterling_  
Signature of Individual Briefed

**DEBRIEF** DATE 30 JAN '94

Having been reminded of my continuing obligation to comply with the terms of this Agreement, I hereby acknowledge that I was debriefed on the above SCI Special Access Programs(s):

_Jeffrey Sterling_  
Signature of Individual Debriefed

I certify that the briefing presented by me on the above date was in accordance with relevant SCI procedures.

Mr. S 4  
Signature of Briefing/Debriefing Officer

SSN (See Notice Below)

Printed or Typed Name | Organization (Name and Address)

NOTICE: The Privacy Act, 5 U.S.C. 522a, requires that federal agencies inform individuals, at the time information is solicited from them whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SS will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above, 2) determine that your access to the information indicated has terminated, or 3) certify that you have witnessed a briefing or debriefing. Although disclosure of your SSN is not mandatory, your failure to do so may impede such certifications or determinations.

**GOVERNMENT EXHIBIT 4 1:10CR485**

Fill in True Name

SFN _

# SENSITIVE COMPARTMENTED INFORMATION NONDISCLOSURE AGREEMENT

X An Agreement Between _JEFFREY STERLING_ and the United States
(Name – Printed or Typed)

1. Intending to be legally bound, I hereby accept the obligations contained in this Agreement in consideration of my being granted access to information or material protected within Special Access Programs, hereinafter referred to in this Agreement as Sensitive Compartmented Information (SCI). I have been advised that SCI involves or derives from intelligence sources or methods and is classified or is in the process of a classification determination under the standards of Executive Order 12958 or other Executive order or statute. I understand and accept that by being granted access to SCI, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information or material have been approved for access to it, and I understand these procedures. I understand that I may be required to sign subsequent agreements upon being granted access to different categories of SCI. I further understand that all my obligations under this Agreement continue to exist whether or not I am required to sign such subsequent agreements.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that last authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in the Department or Agency that last authorized my access to SCI, whether or not I am still employed by or associated with that Department or Agency or a contractor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be SCI, or related to or derived from SCI, is considered by such Department or Agency to be SCI. I further understand that I am also obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

4. In consideration of being granted access to SCI and of being assigned or retained in a position of special confidence and trust requiring access to SCI, I hereby agree to submit for security review by the Department or Agency that last authorized my access to such information or material, any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that I have reason to believe are derived from SCI, that I contemplate disclosing to any person not authorized to have access to SCI or that I have prepared for public disclosure. I understand and agree that my obligation to submit such preparations for review applies during the course of my access to SCI and thereafter, and I agree to make any required submissions prior to discussing the preparation with, or showing it to, anyone who is not authorized to have access to SCI. I further agree that I will not disclose the contents of such preparation to any person not authorized to have access to SCI until I have received written authorization from the Department or Agency that last authorized my access to SCI that such disclosure is permitted.

5. I understand that the purpose of the review described in paragraph 4 is to give the United States a reasonable opportunity to determine whether the preparation submitted pursuant to paragraph 4 sets forth any SCI. I further understand that the Department or Agency to which I have made a submission will act upon it, coordinating within the Intelligence Community when appropriate, and make a response to me within a reasonable time, not to exceed 30 working days from date of receipt.

6. I have been advised that any breach of this Agreement may result in the termination of my access to SCI and removal from a position of special confidence and trust requiring such access, as well as the termination of my employment or other relationships with any Department or Agency that provides me with access to SCI. In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including the provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and of Section 783(b), Title 50, United States Code. Nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

7. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action can be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys fees incurred by the United States Government may be assessed against me if I lose such action.

8. I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title, or claim whatsoever to such information. I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entity providing me access to such materials. If I do not return such materials upon request, I understand this may be a violation of Section 793, Title 18, United States Code.

9. Unless and until I am released in writing by an authorized representative of the Department or Agency that last provided me with access to SCI, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to SCI, and at all times thereafter.

10. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect. This Agreement concerns SCI and does not set forth such other conditions and obligations not related to SCI as may now or hereafter pertain to my employment by or assignment or relationship with the Department or Agency.

11. I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793, 794, 798, and 952 of Title 18, United States Code, and Section 783(b) of Title 50, United States Code, and Executive Order 12958, as amended, so that I may read them at this time, if I so choose.

FORM 4414 (Replaces Form 4355 which is obsolete and
2-97

X00007

Sterling

12. I hereby assign to the United States Government all rights, title and interest, and all royalties, remunerations, and emoluments that have resulted, will result, or may result from any disclosure, publication, or revelation not consistent with the terms of this Agreement.

13. These restrictions are consistent with and do not supersede conflict with or otherwise alter the employee obligations rights or liabilities created by Executive Order 12958; section 7211 of title 5, United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the Military); section 2302(b)(8) of title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 USC 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including section 641, 793, 794, 798, and 952 of title 18, United States Code, and section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

14. This Agreement shall be interpreted under and in conformance with the law of the United States.

15. I make this Agreement without any mental reservation or purpose of evasion.

X _____ Signature _____ Date

The execution of this Agreement was witnessed by the undersigned who accepted it on behalf of the United States Government as a prior condition of access to Sensitive Compartmented Information.

WITNESS and ACCEPTANCE: _____ Signature _____ Date

---

## SECURITY (BRIEFING)/ DEBRIEFING ACKNOWLEDGMENT

(Special Access Programs by Initials Only)

X JEFFREY STERLING    CIA

| SSN (See Notice Below) | Printed or Typed Name | Organization |

**BRIEF**   X DATE 5/28/95

I hereby acknowledge that I was briefed on the above SCI Special Access Programs(s):

X _____
Signature of Individual Briefed

**DEBRIEF**   DATE _____

Having been reminded of my continuing obligation to comply with the terms of this Agreement, I hereby acknowledge that I was debriefed on the above SCI Special Access Programs(s):

_____
Signature of Individual Debriefed

I certify that the briefing presented by me on the above date was in accordance with relevant SCI procedures. (video)

Mr. V.
Signature of Briefing/Debriefing Officer

Mr. V.
Printed or Typed Name

SSN (See Notice Below)

Organization (Name and Address)

---

NOTICE: The Privacy Act, 5 U.S.C. 522a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above, 2) determine that your access to the information indicated has terminated, or 3) certify that you have witnessed a briefing or debriefing. Although disclosure of your SSN is not mandatory, your failure to do so may impede such certifications or determinations.

X00008

**DECLASSIFIED**

## Investigation Case Record

CaseNumber

**ReceivedDate:** 12/20/1999  **InvCompletedDate:**   **ClosedDate:** 12/22/1999

**CaseTitle:** Alleged Retribution for Requesting Early Assignment-NY

| **Subject Name** | **SSN** | **Organization** | **Grade** |
|---|---|---|---|
| STERLING, Jeffrey | | DO/NRD | GS-12 |

**WhereIncidentOccurred:**  **Location:** NEW YORK   **Component:** DO/NRD

**Category**
Assignment
Management & Supervision - Grievance

| **Source Name** | **Organization** |
|---|---|
| STERLING, JEFFREY | DO/NRD |

**CrossRef:**

**Keywords:**

**AllegationOrIssue** Duty Call received by STU-III on 19 Dec 1999.
In November 1999 a DO case officer (CO) assigned to New York requested a short of tour assignment to another office despite his supervisor's advice not to do so. The CO prepared a cable to that office formally requesting consideration for an assignment and placed it in coordination channels on 18 Nov 1999. On 23 November 1999 the CO was given a copy of the cable containing his request and the office head's recommendations. The CO says the cable casts him in an unfavorable light and includes disparaging comments concerning his work performance. He claims the cable comments were the first indication he had that his performance was less than satisfactory. The CO believes the negative comments were retribution for his decision to request early release (six months) from New York and his decision to pursue the assignment in opposition to advice he received from his supervisor and senior management in the NY office. The CO says he filed a grievence through DO channels but is not satisfied with the results. He says the office and the grievance officer (NFI) both (figuratively) "slapped him down." He complains that the grievance officers report substantially supports the position taken by the office opposing his transfer to the other office. He says his professional reputation has been seriously harmed by the comments and the results of the grievance officer's subsequent inquiry. The CO also takes issue with the grievance officer contacting the other office for information contained in the grievance report. The CO says he should have been given the opportunity to review the comments on his application prior to the office sending the cable. He believes he was

Thursday, June 24, 2010

Page 1 of 2

**DECLASSIFIED**


GOVERNMENT
EXHIBIT
34
1:10CR485

X00112

**DECLASSIFIED**

not provided the opportunity to do so as punishment for his actions. The CO is unable to identify any policy or regulation that was violated or any patently false statements. Short of receiving the assignment to the other office he could not identify any satisfactory resolution to his predicament and volunteered that he was reacting emotionally to the situation. The CO agreed to be contacted on 20 December 1999 at        and advised of his options. The facts of the complaint were discussed with an experienced IG grievance investigator who concluded the CO's course of action        is to appeal the findings of the grievance officer to the next higher level.

On 22 December 1999 STERLING returned a call placed to him on 21 December. He said his grievance inquiry was conducted by    Mr. E   the DDO grievance officer. STERLING was told his next level of appeal is the EXDIR. He was told to reference    an internal regulation.

Sterling says he intends to seek outside counsel to determine if he has any additional options for redress. After acknowledging his right to seek counsel Sterling was cautioned that his        position required he discuss job related information only with a cleared counsel. Sterling acknowledged that he understood the requirements. Sterling acknowledged that his communication with the IG Office was confidential and his management would not be informed of his plans to seek outside counsel. Sterling was asked again what redress he seeks and was unable to articulate an acceptable solution. Before the conversation was formally terminated the STU-III connection was broken; Sterling did not call back.

CaseClosureJustification  On 22 December 99 recontacted OIG/INV. STERLING was encouraged to review the reg. STERLING was informed the appropriate next step for processing his grievance is the EXDIR if he decides to pursue the matter. He was reminded he must secure a security cleared counsel before discussing job related issues which could compromise his cover. No additional action anticipated.

Thursday, June 24, 2010

Page 2 of 2

**DECLASSIFIED**

O00002
X00113

~~CONFIDENTIAL~~   **DECLASSIFIED**

The sender's identity cannot be verified. If you question the validity of this mail's content, please contact your ISSM.

```
CL BY:
CL REASON: (c)
DECL ON: X1
DRV FROM: COV 1-82
```



David R. Shedd- -@DCI
DCI/OCA
08/08/2000 05:16 PM

To   James L. Pavitt@DO,   Mr. T.
cc   John H. Moseman@DCI,   a CIA officer,   John O. Brennan@DCI,   a CIA officer,
     Ms. F.,   Ms. E.,   a CIA officer
bcc
Subject   EYES ONLY — HPSCI Sheehy/Parker Session on Mr. Jeff Sterling

Jim/ Mr. T.:

Senior EEO lawyer   Ms. F.   , AC/HRS   Ms. S.   , C/OCA/Leg   Ms. E.   and I met on 8 August '00 with HPSCI Minority Staff Director Mike Sheehy and HPSCI minority staff member Wyndee Parker at the request of Sheehy/Parker to discuss the procedures associated with the possible formal complaint/EEO related issues of DO officer Mr. Jeff Sterling (Subject).

Salient points of the hour plus discussion are as follow:

> According to Sheehy, Subject brought his case to the attention of HPSCI Ranking Minority Member Julian Dixon as a result of Subject having seen or heard of Rep. Dixon's presentation to DIA on diversity. Per Sheehy, Subject decided to contact Rep. Dixon as a result and express his concerns that his professional career in the Agency does not match what Rep. Dixon (reportedly) describes in the DIA associated diversity event. Both Sheehy and separately, Parker, have met with Subject to hear his views on his professional situation and history.

> Sheehy said that he is interested in knowing how Agency/DO management has treated Subject throughout his career. Specifically, he asked for how Subject's cover was adjusted to carry out the mission as an ops officer against   Iran   and an explanation as to how Subject, as a valuable resource, was not used by the   NE Team (NE-2)   . Generically, Sheehy asked for how the DO directs career selection and how that selection is checked on throughout an officer's career.

~~CONFIDENTIAL~~
**DECLASSIFIED**

GOVERNMENT
EXHIBIT
53
1:10CR485

X00160

CONFIDENTIAL  **DECLASSIFIED**

As a second part to what Sheehy was looking for, he wanted to know how his (Subject's) work was treated and how Subject himself was treated against a backdrop of possible unfair managerial decisions and one (alleged) act of harassment that was racially motivated, according to Subject.

Ms. F. began by responding to the second set of issues as they relate to EEO. She highlighted that Subject has not yet defined the issue of discrimination for the EEO counselor despite repeated efforts to obtain from Subject an understanding of what that those alleged issue(s) are from Subject.

Ms. F. explained the entire EEO procedure but specifically noted that Subject has until close of business 9 August '00 to complete a 'right to file' procedure with a formal complaint. That step has not been taken by Subject.

Sheehy interjected that Subject has in fact defined the issue(s) for him (and separately for Parker) in narrow terms: racial discrimination vis-a-vis a Caucasian officer in New York office as part of an Advanced Work Plan (AWP) that was inequitable in what was being asked for and separately, inadequate cover to carry out the mission (                                          ) in New York office.

In addition, Sheehy said that while in New York, Subject alleges that after he raised his EEO related concerns, he (Subject) had personal property at the office destroyed (sic). Sheehy, on the issue that Subject claims not to have ever been used by the         NE-2         suggested that it looks to him (Sheehy) like (DO) ineptitude vice discrimination. We avoided specific career/performance discussions on Subject with Sheehy/Parker.

Ms. S. provided an extensive description on the DO career and assignment selection process starting with the entry level (Career Trainee in Subject's case) through full performance (GS-13). She described in detail the counseling that is provided; cover                    and field assignment rotations. In a generic sense but applicable to Subject, I noted that         his cover

in his prior assignment was appropriate.

Sheehy wondered aloud if there was ever a calculation to have Subject not do well in the field in exchange for having him become a desk officer. Ms. S. emphatically rejected the suggesting by underscoring the huge investment made in our CTs (CSTs).

Concerning        Sheehy said that Subject claims that his two efforts to have
his cover                   issue resolved
                                       were rebuffed; he was told by New York
management                 the reasons why.

Ms. S. gave Sheehy and Parker an extensive explanation on how "short of tours" are handled, reviewed, and decided along with a description of the impact,

CONFIDENTIAL  **DECLASSIFIED**

X00161

 **DECLASSIFIED**

and the counseling associated with a short of tour. I underscored how seriously short of tours are taken throughout the DO and provided a generic example of such a case not at all associated with Subject's situation. In conclusion, Ms. S. gave a detailed description of the AWP process to include the "give and take" nature of the AWP in terms of the officer's strengths/weaknesses, requisite performance to meet "full performance," and the impact of the AWP on the Performance Appraisal Report (PAR).

Throughout the session with Sheehy/Parker, Agency interlocutors made every effort to avoid discussion of any specific performance related issues associated with Subject. Rather, EEO and DO personnel procedures were the main focus. Sheehy and Parker appeared pleased with the briefing.

Following the briefing, I underscored for Sheehy that the DDO is fully committed to seeing that "due process" is provided in this case if/when Subject wishes to proceed with a formal filing and to talk/discuss specific performance issues would be highly inappropriate. Sheehy agreed.

"The Classification tool is not available, please contact the Agency Help Desk at :           ."



## SENSITIVE COMPARTMENTED INFORMATION NONDISCLOSURE AGREEMENT

An Agreement Between ___Jeffrey Sterling___ (Name - Printed or Typed) and the United States

1. Intending to be legally bound. I hereby accept the obligations contained in this Agreement in consideration of my being granted access to information or material protected within Special Access Programs, hereinafter referred to in this Agreement as Sensitive Compartmented Information (SCI). I have been advised that SCI involves or derives from intelligence sources or methods and is classified or is in the process of a classification determination under the standards of Executive Order 12958 or other Executive order or statute. I understand and accept that by being granted access to SCI, special confidence and trust shall be placed in me by the United States Government.

2. I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information or material have been approved for access to it, and I understand these procedures. I understand that I may be required to sign subsequent agreements upon being granted access to different categories of SCI. I further understand that all my obligations under this Agreement continue to exist whether or not I am required to sign such subsequent agreements.

3. I have been advised that the unauthorized disclosure, unauthorized retention, or negligent handling of SCI by me could cause irreparable injury to the United States or be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government department or agency (hereinafter Department or Agency) that last authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in the Department or Agency that last authorized my access to SCI, whether or not I am still employed by or associated with that Department or Agency or a contractor thereof, in order to ensure that I know whether information or material within my knowledge or control that I have reason to believe might be SCI, or related to or derived from SCI, is considered by such Department or Agency to be SCI. I further understand that I am also obligated by law and regulation not to disclose any classified information or material in an unauthorized fashion.

4. In consideration of being granted access to SCI and of being assigned or retained in a position of special confidence and trust requiring access to SCI, I hereby agree to submit for security review by the Department or Agency that last authorized my access to such information or material, any writing or other preparation in any form, including a work of fiction, that contains or purports to contain any SCI or description of activities that produce or relate to SCI or that I have reason to believe are derived from SCI, that I contemplate disclosing to any person not authorized to have access to SCI or that I have prepared for public disclosure. I understand and agree that my obligation to submit such preparations for review applies during the course of my access to SCI and thereafter, and I agree to make any required submissions prior to discussing the preparation with, or showing it to, anyone who is not authorized to have access to SCI. I further agree that I will not disclose the contents of such preparation to any person not authorized to have access to SCI until I have received written authorization from the Department or Agency that last authorized my access to SCI that such disclosure is permitted.

5. I understand that the purpose of the review described in paragraph 4 is to give the United States a reasonable opportunity to determine whether the preparation submitted pursuant to paragraph 4 sets forth any SCI. I further understand that the Department or Agency to which I have made a submission will act upon it, coordinating within the Intelligence Community when appropriate, and make a response to me within a reasonable time, not to exceed 30 working days from date of receipt.

6. I have been advised that any breach of this Agreement may result in the termination of my access to SCI and removal from a position of special confidence and trust requiring such access, as well as the termination of my employment or other relationships with any Department or Agency that provides me with access to SCI. In addition, I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including the provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and of Section 783(b), Title 50, United States Code. Nothing in this Agreement constitutes a waiver by the United States of the right to prosecute me for any statutory violation.

7. I understand that the United States Government may seek any remedy available to it to enforce this Agreement including, but not limited to, application for a court order prohibiting disclosure of information in breach of this Agreement. I have been advised that the action can be brought against me in any of the several appropriate United States District Courts where the United States Government may elect to file the action. Court costs and reasonable attorneys fees incurred by the United States Government may be assessed against me if I lose such action.

8. I understand that all information to which I may obtain access by signing this Agreement is now and will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. Subject to such determination, I do not now, nor will I ever, possess any right, interest, title, or claim whatsoever to such information. I agree that I shall return all materials that may have come into my possession or for which I am responsible because of such access, upon demand by an authorized representative of the United States Government or upon the conclusion of my employment or other relationship with the United States Government entity providing me access to such materials. If I do not return such materials upon request, I understand this may be a violation of Section 793, Title 18, United States Code.

9. Unless and until I am released in writing by an authorized representative of the Department or Agency that last provided me with access to SCI, I understand that all conditions and obligations imposed upon me by this Agreement apply during the time I am granted access to SCI, and at all times thereafter.

10. Each provision of this Agreement is severable. If a court should find any provision of this Agreement to be unenforceable, all other provisions of this Agreement shall remain in full force and effect. This Agreement concerns SCI and does not set forth such other conditions and obligations not related to SCI as may now or hereafter pertain to my employment by or assignment or relationship with the Department or Agency.

11. I have read this Agreement carefully and my questions, if any, have been answered to my satisfaction. I acknowledge that the briefing officer has made available Sections 793, 794, 798, and 952 of Title 18, United States Code, and Section 783(b) of Title 50, United States Code, and Executive Order 12958, as amended, so that I may read them at this time, if I so choose.

FORM 4414 (Replaces Form 4355 which is obsolete and will not be used)
2-97

GOVERNMENT EXHIBIT
79
1:10CR485

X00088

12. I hereby assign to the United States Government all rights, title and interest, and all royalties, remunerations, and emoluments that have resulted, will result, or may result from any disclosure, publication, or revelation not consistent with the terms of this Agreement.

13. These restrictions are consistent with and do not supersede conflict with or otherwise alter the employee obligations rights or liabilities created by Executive Order 12958; section 7211 of title 5. United States Code (governing disclosures to Congress); section 1034 of title 10, United States Code, as amended by the Military Whistleblower Protection Act (governing disclosure to Congress by members of the Military); section 2302(b)(8) of title 5, United States Code, as amended by the Whistleblower Protection Act (governing disclosures of illegality, waste, fraud, abuse or public health or safety threats); the Intelligence Identities Protection Act of 1982 (50 USC 421 et seq.) (governing disclosures that could expose confidential Government agents), and the statutes which protect against disclosure that may compromise the national security, including section 641, 793, 794, 798, and 952 of title 18, United States Code, and section 4(b) of the Subversive Activities Act of 1950 (50 U.S.C. section 783(b)). The definitions, requirements, obligations, rights, sanctions and liabilities created by said Executive Order and listed statutes are incorporated into this Agreement and are controlling.

14. This Agreement shall be interpreted under and in conformance with the law of the United States.

15. I make this Agreement without any mental reservation or purpose of evasion.

_____✓_____    _____✓_____
         Signature                          Date

The execution of this Agreement was witnessed by the undersigned who accepted it on behalf of the United States Government as a prior condition of access to Sensitive Compartmented Information.

WITNESS and ACCEPTANCE: ____Gayle Scherlis____    31 Jan 2002
                              Signature              Date

## SECURITY BRIEFING / DEBRIEFING ACKNOWLEDGMENT

SI    TK    G    ____    ____    ____

(Special Access Programs by Initials Only)

✓ _____    ✓ JEFFREY STERLING ✓    CIA
SSN (See Notice Below)    Printed or Typed Name    Organization

**BRIEF**  DATE: _____         **DEBRIEF**  DATE ✓

I hereby acknowledge that I was briefed on the above SCI Special Access Programs(s):

Signature of Individual Briefed

Having been reminded of my continuing obligation to comply with the terms of this Agreement, I hereby acknowledge that I was debriefed on the above SCI Special Access Programs(s):

[written across: ADMIN DEBRIEF]

Signature of Individual Debriefed

I certify that the briefing presented by me on the above date was in accordance with relevant SCI procedures.

_Gayle Scherlis_                           _____
Signature of Briefing/Debriefing Officer    SSN (See Notice Below)

GAYLE SCHERLIS                             OS1
Printed or Typed Name                      Organization (Name and Address)

NOTICE: The Privacy Act, 5 U.S.C. 522a, requires that federal agencies inform individuals, at the time information is solicited from them, whether the disclosure is mandatory or voluntary, by what authority such information is solicited, and what uses will be made of the information. You are hereby advised that authority for soliciting your Social Security Account Number (SSN) is Executive Order 9397. Your SSN will be used to identify you precisely when it is necessary to 1) certify that you have access to the information indicated above, 2) determine that your access to the information indicated has terminated, or 3) certify that you have witnessed a briefing or debriefing. Although disclosure of your SSN is not mandatory, your failure to do so may impede such certifications or determinations.

**EMPLOYEE REFUSED TO SIGN**

X00089

Classify as Appropriate

# SECURITY EXIT FORM

| NAME (Last, First, M.I.) | EMPLOYEE NUMBER (AIN) |
|---|---|
| STERLING J | |

| MAILING ADDRESS | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| 13455 /ALTCREST CT HERNDON, VA 20171 | 703/793-5388 |

| TITLE, GRADE, DIRECTORATE / OFFICE | SEPARATION STATUS: |
|---|---|
| OO 12 DO/NE | ☐ COVERT  ☒ OVERT |

**PLEASE CHECK ITEMS TO BE TURNED IN:**

☐ BADGE ☐ PASSES ☐ KEYS ☐ CREDENTIAL ☐ GOV'T DRIVERS LICENSE ☐ ID CARDS ☐ ALIAS DOCUMENTS
☐ PASSPORTS ☐ CLASSIFIED NOTES/MATERIALS ☐ OTHER GOV'T _____ (Specify)

**PLEASE CHECK ACCESSES:**  **REASON FOR LEAVING:**

☒ SCI ☐ RETIRE ☐ RESIGN ☐ LWOP ☐ LWP ☐ MATERNITY ☐ ESP
☐ Q ☐ DETAILEE ☒ INVOLUNTARY SEPARATION ☐ WAE ☐ OTHER - SPECIFY:
☐ CRYPTO EFFECTIVE DATE: 1/31/02    EXPECTED DATE OF RETURN: _____

1) I understand that the Secrecy Agreement executed upon my entrance-on-duty (EOD) requires the obligation to protect classified information, sources, and methods against unauthorized disclosure after my separation from Agency employment.

2) I am advised that all information received and compiled while employed with the Agency is official and is the property of the U.S. Government forever and no employee or former employee has any property right to such material.

3) I give my assurance that there is no classified material in my possession, custody, or control at this time.

4) I am instructed that classified information pertaining to intelligence operations, sources, and methods specific to the Agency may not be divulged, without authorization of the Director of Central Intelligence or designee, to any persons, even though they possess a security clearance within their own organization.

5) I am advised on Headquarters policy regarding nonofficial publication and presentation by employees and former employees.

6) I am responsible to notify and obtain approval from the CIA of any intelligence-related information that needs to be disclosed to a legal/court official prior to its disclosure.

7) I am informed that should any question arise on security matters, I may communicate with the Agency for assistance.

| EMPLOYEE | WITNESS |
|---|---|
| SIGNATURE | SIGNATURE: Gayle Scherlis |
| DATE | PRINTED NAME: GAYLE SCHERLIS |
| SOCIAL SECURITY NUMBER | DATE: 31 Jan 2002 |

Classify as Appropriate

FORM 1099 (EF) PREVIOUS EDITION
4-97

CL BY:
CL REASON:
DECL ON:
DRV FROM:

**EMPLOYEE REFUSED TO SIGN**

X00090